UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY MARIE WHITEHORNE,

                                Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

DECISION & ORDER

19-CV-0256MWP

## PRELIMINARY STATEMENT

Plaintiff Kelly Marie Whitehorne ("Whitehorne") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 19).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 12, 15). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Whitehorne's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise."  *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

       A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*).  The five steps are:

> (1)    whether the claimant is currently engaged in substantial
> gainful activity;
>
> (2)    if not, whether the claimant has any "severe impairment"
> that "significantly limits [the claimant's] physical or mental
> ability to do basic work activities";
>
> (3)    if so, whether any of the claimant's severe impairments
> meets or equals one of the impairments listed in Appendix
> 1 of Subpart P of Part 404 of the relevant regulations (the
> "Listings");
>
> (4)    if not, whether despite the claimant's severe impairments,
> the claimant retains the residual functional capacity
> [("RFC")] to perform [her] past work; and
>
> (5)    if not, whether the claimant retains the [RFC] to perform
> any other work that exists in significant numbers in the
> national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


II.     **Procedural History**

        Whitehorne protectively filed for SSI on August 28, 2012.  (Tr. 254).[1]  That application was denied by an ALJ on March 10, 2015.  (Tr. 8-31).  On appeal, the United States District Court for the Western District of New York ordered a remand agreed to by Whitehorne and the Commissioner on May 18, 2017. (Tr. 994).  On October 26, 2017, the Appeals Council entered a remand order instructing the ALJ to: (1) further evaluate the severity of Whitehorne's asthma at step two of the sequential evaluation; (2) give further consideration to the medical opinion evidence, explain the weight given to such opinion evidence, and consider requesting additional medical opinions or clarification of the opinions submitted; (3) give further consideration to Whitehorne's maximum RFC and provide an explanation of her assessed limitations with specific reference to supporting evidence in the record; (4) further evaluate Whitehorne's alleged symptoms and explain his evaluation in accordance with applicable regulations; and (5) if warranted, obtain supplemental evidence from a vocational expert. (Tr. 995-1001).  Following remand, on November 13, 2018, the ALJ concluded that Whitehorne was not disabled.  (Tr. 875-905).  Whitehorne commenced this lawsuit on February 27, 2019. (Docket # 1).

---

[1]  The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

**III.    The ALJ's Decision**

   In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  Under step one of the process, the ALJ found that Whitehorne had not engaged

in substantial gainful activity since August 28, 2012, the application date.  (Tr. 878-97).  At step

two, the ALJ concluded that Whitehorne had the severe impairments of asthma, migraine

headaches, obesity, anxiety, obsessive-compulsive disorder ("OCD"), panic disorder,

post-traumatic stress disorder ("PTSD"), and depression.  (*Id.*).  The ALJ also found that

Whitehorne suffered from chronic fatigue syndrome, hypothyroidism, cardiomyopathy, lumbar

radiculopathy, irritable bowel syndrome, sleep apnea, and substance abuse, but that those

impairments were nonsevere.  (*Id.*).  At step three, the ALJ determined that Whitehorne did not

have an impairment (or combination of impairments) that met or medically equaled one of the

listed impairments in the Listings.  (*Id.*).  With respect to her mental impairments, the ALJ

concluded that Whitehorne suffered from mild limitations in her ability to understand, remember,

or apply information, and to adapt or manage oneself, and moderate limitations in her ability to

interact with others and to concentrate, persist, or maintain pace.  (*Id.*).

   The ALJ concluded that Whitehorne retained the RFC to perform light work with

certain limitations.  (*Id.*).  Specifically, the ALJ found that Whitehorne could lift, carry, push,

and pull up to twenty pounds occasionally and ten pounds frequently, could sit, stand, and walk

for up to six hours per day, could frequently climb ramps or stairs and occasionally balance,

stoop, kneel, and crouch, but could not crawl or climb ladders, ropes, or scaffolds.  (*Id.*).  He

further concluded that Whitehorne could tolerate moderate noise, but could not be exposed to

excessive cold, moisture, humidity, pulmonary irritants, workplace hazards, or bright or flashing

lights.  (*Id.*).  According to the ALJ, Whitehorne was limited to work involving simple, routine

tasks that can be learned after a short demonstration or within thirty days and which requires

doing the same tasks every day with little variation in location, hours, or tasks.  (*Id.*).

Additionally, Whitehorne was limited to jobs permitting her to be off-task up to five percent of

the workday, requiring only occasional interaction with coworkers and no more than superficial

interaction with the public, and that did not require her to travel to unfamiliar places,

independently develop work strategies or identify workplace needs, or participate in teamwork.

(*Id.*).  At steps four and five, the ALJ found that Whitehorne had no past relevant work but that

other jobs existed in significant numbers in the national economy that Whitehorne could

perform, including the positions of photo machine operator, mail clerk, and housekeeping

cleaner.  (*Id.*).  Accordingly, the ALJ found that Whitehorne was not disabled.  (*Id.*).


## IV.     **Whitehorne's Contentions**

Whitehorne contends that the ALJ's determination that she is not disabled is not

supported by substantial evidence and is the product of legal error.  (Docket ## 12, 17).  First,

Whitehorne argues that the ALJ failed to account for her limitations in dealing with supervisors

when formulating her mental RFC.  (Docket ## 12-1 at 14-17; 17 at 1-2).  Second, Whitehorne

maintains that the ALJ improperly evaluated the opinion evidence of record, resulting in an RFC

determination not supported by substantial evidence.  (Docket ## 12-1 at 17-20; 17 at 2-3).


## V.      **Analysis**

An individual's RFC is her "maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel,* 198

6

F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  When

making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental

abilities, symptomology, including pain and other limitations which could interfere with work

activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221

(N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider

all the relevant evidence, including medical opinions and facts, physical and mental abilities,

non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*,

2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370

F. App'x 231 (2d Cir. 2010).

### A. <u>The ALJ's Assessment of Whitehorne's Social Interaction Limitations</u>

I turn first to Whitehorne's contention that the ALJ failed to account for

limitations in her ability to interact with supervisors.  (Docket ## 12-1 at 14-17; 17 at 1-2).

According to Whitehorne, several medical opinions in the record demonstrate that she suffered

from limitations in her ability to interact with others.  (Docket # 12-1 at 15).  Whitehorne

maintains that although the ALJ adequately accounted for her limited ability to interact with

coworkers and the general public when formulating her RFC, the ALJ erred by not including any

limitation in her ability to interact with supervisors.  (Docket ## 12-1 at 14-17; 17 at 1-2).  I find

that any error by the ALJ in this regard was harmless, and this challenge thus does not warrant

remand.

As an initial matter, and as noted by the ALJ, Whitehorne herself indicated that

she did not have any problems following instructions or getting along with "bosses" or "other

people in authority."  (Tr. 287, 894).  In his decision, the ALJ explicitly rejected medical opinion

evidence concluding that Whitehorne suffered from moderate limitations in interacting with

supervisors, concluding that such limitations were not supported by the record.  (Tr. 894).

Moreover, with the exception of the opinion evidence explicitly rejected by the ALJ, Whitehorne

does not identify any other evidence in the record that suggests that she is unable to interact with

supervisors.[2]  Accordingly, little record evidence exists to support Whitehorne's contention that

she even suffers from limitations in interacting with supervisors.  *See Meiers v. Comm'r of Soc.*

*Sec.*, 2020 WL 2768740, *5 (W.D.N.Y. 2020) ("[t]he ALJ's determination not to include any

specific limitation in the RFC relating to [plaintiff's] ability to interact with supervisors . . . is

consistent . . . with other record evidence demonstrating that [plaintiff] herself reported no

difficulties following instructions or responding appropriately to those in authority[;] . . .

[plaintiff] has simply failed to provide any support for her contention that [the physicians']

conclusion[s] that she has 'some' limitations in her ability to interact with others required the

ALJ to conclude that she would be limited in her ability to interact with supervisors"); *Patterson*

*v. Comm'r of Soc. Sec.*, 2019 WL 4573752, *5 (W.D.N.Y. 2019) ("[p]laintiff presents no

evidence that he could not respond appropriately to supervision[;] . . . [although physician]

indicated plaintiff was 'moderately limited' in interacting with others, she did not specifically

identify any problems in interacting with supervisors[,] . . . [and] [p]laintiff provides no citation

to evidence in the record to support his assertion he could not appropriately respond to

supervisors"); *Martinez Reyes v. Comm'r of Soc. Sec.*, 2019 WL 3369255, *7 (W.D.N.Y. 2019)

(failure to account for limitations in interacting with supervisors harmless where there was "not

---

[2]  Whitehorne references her "argumentative" interaction with caseworkers at the time of her mental health arrest in January 2017.  (Docket # 12-1 at 16).  Although such behavior might be suggestive of a limitation in her ability to interact with others, I do not find that it necessarily suggests an inability or limitation in her ability to interact with supervisors.  In any event, as discussed *infra*, this incident occurred during a temporary deterioration in Whitehorne's mental health as a result of her decision to cease taking mental health medication.

substantial evidence in the record to support a finding that plaintiff was substantially limited in interacting with supervisors").

In any event, any failure by the ALJ to include a specific limitation relating to Whitehorne's ability to interact with supervisors in the RFC was harmless because the positions identified by the vocational expert do not require more than occasional interaction with supervisors. *See Martinez Reyes v. Comm'r of Soc. Sec.*, 2019 WL 3369255 at *7 ("because the jobs cited by the [vocational expert] involve only occasional interaction with supervisors, the ALJ's failure to address [the treating physician's] opinion as to plaintiff's ability to interact with supervisors is not grounds for remand"). As his decision makes clear, based upon the testimony from the vocational expert, the ALJ concluded that Whitehorne, despite her RFC, retained the ability to perform the positions of photo machine operator, DOT 207.685-014, 1991 WL 671745 (1991), housekeeping cleaner, DOT 323.687-014, 1991 WL 672783 (1991), and mail clerk, DOT 209.687-026, 1991 WL 671813 (1991). (Tr. 896). As discussed below, none of these positions requires significant interaction with supervisors.

The Dictionary of Occupational Titles ("DOT") "provides a code, numbered 0-8, for the type of social interaction each occupation requires." *Habschied v. Berryhill*, 2019 WL 1366040, *9 (W.D.N.Y. 2019) (citing *Race v. Comm'r of Soc. Sec.*, 2016 WL 3511779, *5 n.4 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 3512217 (N.D.N.Y. 2016)). Each of the positions identified by the vocational expert lists the type of social interaction required as 8, indicating that the degree of relation to people is "not significant." *See* DOT 207.685-014, 1991 WL 671745 (1991) (photo machine operator); DOT 323.687-014, 1991 WL 672783 (1991) (housekeeping cleaner); DOT 209.687-026, 1991 WL 671813 (1991) (mail clerk). Level 8 interaction requires:

> Taking Instructions—Helping: Attending to the work assignment
> instructions or orders of supervisor.  (No immediate response
> required unless clarification of instructions or orders is needed).
> Helping applies to 'non-learning' helpers.

*See* DOT, Appendix B, 1991 WL 688701 (1991).  Positions categorized as involving level 8

interaction can be performed by individuals who require limited interaction with supervisors.

*See Call v. Comm'r of Soc. Sec.* 2017 WL 2126809, *5 (N.D.N.Y. 2017); *Alie v. Berryhill*, 2017

WL 2572287, *16 (E.D. Mo. 2017) ("[l]evel 8 interaction is compatible with a RFC limiting a

claimant to only superficial contact with coworkers, supervisors, and the public"); *Race v.*

*Comm'r of Soc. Sec.*, 2016 WL 3511779 at *5 n.4; *Sanchez v. Colvin*, 2014 WL 5147793, *16

(M.D. Pa. 2014) ("a position with this 'people' code is one that can be performed despite

limitations in interacting with supervisors") (collecting cases).  Accordingly, any error in failing

to include in Whitehorne's RFC a limitation relating to interaction with supervisors was

harmless, and remand is not warranted on this ground.  *See Martinez Reyes*, 2019 WL 3369255

at *7 ("any failure by the ALJ to account for [physician's] opinion regarding plaintiff's ability to

interact with supervisors was harmless because the jobs cited by the [vocational expert] involved

only occasional interaction with supervisors").

### B.    The ALJ's Consideration of Opinion Evidence

I turn next to Whitehorne's argument that the ALJ erred by placing greater

reliance on the allegedly stale opinions of state consultative examiners Renee Baskin ("Baskin"),

Ph.D., and Thomas Ryan ("Ryan"), PhD, and state agency non-examining reviewers Hilary

Tzetzo ("Tzetzo"), MD, and C. Butensky ("Butensky"), MD, than on the more current opinion of

state consultative examiner Janine Ippolito ("Ippolito"), Psy.D.[3]  (Docket ## 12-1 at 17-20; 17 at

---

[3] The record also contains an opinion concerning Whitehorne's mental impairments authored by
non-examining state consultant Aroon Suansilppongse, MD, who concluded that Whitehorne's mental impairments

2-3).  Whitehorne maintains that the opinions of Baskin, Ryan, Tzetzo and Butensky were stale because they were rendered in either 2008 or 2012 – well before the ALJ's decision – and because they were rendered before Whitehorne's ten-day mental health hospitalization in early 2017.  (*Id.*).

Baskin, who evaluated Whitehorne on July 24, 2008, opined that Whitehorne suffered from minimal to no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks with supervision, and moderate limitations in her ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress.  (Tr. 382-85).  In his decision, the ALJ gave this opinion "great weight," concluding that the opinion was consistent with the record as a whole, "including the claimant's sporadic counseling, improvement when restarted on medication after her hospitalization, noted adequate social skills at multiple consultative examinations, noted normal affect and speech at many primary care visits, often noted intact concentration and memory, and the extent of her daily activities such as completing two degrees and performing daily childcare, suggesting the ability to perform the range of simple work despite the claimant's need for medication and observed deficits in mood, affect, and appearance at times."  (Tr. 893).

Ryan, who evaluated Whitehorne on November 2, 2012, opined that Whitehorne was capable of following and understanding simple directions and instructions, performing simple tasks, maintaining attention, concentration, and a regular schedule, learning new tasks, and making adequate decisions, but could have mild limitations in her ability to perform complex tasks and to deal with others and stress.  (Tr. 619-622).  In his decision, the ALJ gave

---

were not severe.  (Tr. 757-767).  The ALJ gave this opinion little weight (Tr. 894), and Whitehorne does not appear to challenge the ALJ's weighing of that assessment.

Ryan's opinion "partial weight," concluding that although the opinion was consistent with a finding that Whitehorne was not disabled, the record demonstrated that she needed to be limited to "the range of simple, low stress, and low contact work." (Tr. 893-94).

Butensky reviewed the available medical records and rendered an opinion concerning Whitehorne's mental functioning on August 7, 2008. (Tr. 412, 414-16). According to Butensky, Whitehorne had no limitations in her ability to remember locations and work-like procedures; understand, remember and carry out simple and detailed instructions; make simple work-related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions. (*Id.*). Butensky opined that Whitehorne suffered from moderate limitations in her ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel in unfamiliar places; and set realistic goals or make plans independently of others. (*Id.*). According to Butensky, Whitehorne would work best in a low-contact, low-stress work environment. (*Id.*).

Tzetzo reviewed the available medical records, including Butensky's opinion, and rendered an opinion concerning Whitehorne's mental functioning on December 6, 2012.

(Tr. 101, 104-06).  Tzetzo assessed virtually identical limitations to those identified by Butensky,

although Tzetzo opined that Whitehorne suffered from moderate limitations in her ability to

maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness,

while Butensky opined that Whitehorne had no such limitations.  (*Compare* Tr. 105 *with* 415).

Tzetzo opined that Whitehorne was capable of performing simple work.  (Tr. 101).  In his

decision, the ALJ gave the opinions of Butensky and Tzetzo "partial weight," reasoning that

while their findings of only moderate mental limitations were generally consistent with the

overall record, their opinions that Whitehorne had moderate limitations in working without

special supervision or interacting with supervisors was not supported by the record.  (Tr. 894).

On March 8, 2018, Ippolito, conducted a psychiatric evaluation of Whitehorne

and completed a statement concerning Whitehorne's mental ability to engage in work-related

activities.  (Tr. 1197-1205).[4]  Ippolito concluded that Whitehorne had no limitation in her ability

to understand, remember, and apply simple directions and instructions and maintain personal

hygiene and appropriate attire.  (*Id.*).  She further found that Whitehorne had mild limitations in

her ability to understand, remember, and apply complex directions and instructions, and

moderate limitations in her ability to sustain concentration and perform at a consistent pace,

sustain an ordinary routine and regular attendance at work, and demonstrate awareness of normal

hazards and take appropriate precautions.  (*Id.*).  According to Ippolito, Whitehorne had marked

limitations in her ability to use reason and judgment to make work-related decisions, interact

adequately with supervisors, coworkers, and the public, and regulate emotions, control behavior,

and maintain well-being.  (*Id.*).  In his decision, the ALJ gave Ippolito's assessment "partial

weight," concluding that her findings that Whitehorne suffered from some mild and moderate

---

[4]  A duplicate copy of Ippolitio's psychiatric evaluation is contained in the administrative transcript.
(Tr. 1178-1183).

limitations in functioning were consistent with the overall record, but that her conclusions that Whitehorne suffered from marked limitations in some areas of functioning were inconsistent with the record.  (Tr. 895).

Whitehorne challenges the ALJ's reliance on the medical opinions of Baskin, Ryan, Tzetzo, and Butensky because they were rendered several years before the ALJ's decision and because they were rendered prior to the deterioration in her mental health resulting in her hospitalization in 2017.  (Docket ## 12-1 at 17-21; 17 at 2-3).  I disagree.

As acknowledged by the ALJ, the record demonstrates only sporadic therapy services to address Whitehorne's mental health impairments.  (Tr. 893).  According to the records, with the exception of attending mental health counseling at Western New York Psychotherapy Services between July 2012 and January 2013,[5] Whitehorne did not participate in ongoing therapy to address her mental health impairments.  (Tr. 716-36).  Rather, Whitehorne primarily addressed her mental health impairments with medication prescribed by her primary care physician.  (Tr. 785-831, 852-71, 1305-50).

In August 2016, Whitehorne decided that she wished to cease taking the medication prescribed to address her mental health impairments because she believed that it was ineffective in managing her symptoms.  (Tr. 1324-27).  At Whitehorne's request, her provider instructed her to wean from the medication and discontinued prescribing it.  (*Id.*).  Although a follow-up visit with her primary care provider in October 2016 suggested that Whitehorne was stable after discontinuing the medication, on December 15, 2016, Whitehorne reported that her mental health impairments were getting worse without medication management and her primary

---

[5] The records suggest that although Whitehorne attempted to re-initiate treatment with this provider in July 2014, she apparently did not participate in any ongoing treatment thereafter.  (Tr. 838-42).

care provider prescribed Lexapro and referred her to a mental health provider for treatment. (Tr. 1328-36).

On January 27, 2017, Whitehorne was hospitalized pursuant to a mental health arrest after an outreach visit requested by her mother due to Whitehorne's self-injurious behavior, including hitting herself. (Tr. 1212-17). Whitehorne remained hospitalized for ten days, during which time she received therapy and medication management. (Tr. 1212-75). During her treatment, Whitehorne reported that she had not been taking medication to address her mental health. (Tr. 1260). According to her discharge records, Whitehorne stabilized with medication, which she tolerated well. (Tr. 1222).

At a visit with her primary care physician after her discharge, Whitehorne reported that she was not participating in outpatient mental health counseling, and her provider urged her to do so. (Tr. 1337-39). Whitehorne's primary care provider continued managing her mental health medication. (Tr. 1337-1350). Records suggest that Whitehorne subsequently sought mental health treatment from BestSelf Behavioral Health, Inc., beginning in June 2018. (Tr. 1393-95).

Whitehorne is generally correct that "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and that "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted). That said, "[t]he mere passage of time does not render an opinion stale," *Whitehurst v. Berryhill*, 2018 WL 3868721, *4 (W.D.N.Y. 2018), and "a medical opinion is [not] stale merely because it pre-dates other evidence in the

record, where . . . the subsequent evidence does not undermine [the opinion evidence],"

*Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652

F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Best v. Berryhill*, 2019 WL

1146341, *3 (W.D.N.Y. 2019) ("[t]he relevant issue is whether plaintiff's condition *deteriorated*

during th[e] period [at issue]"); *Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n

every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical

opinion about the claimant's condition is rendered and the date that the ALJ considers that

opinion[;] [f]requently, new evidence about the claimant's condition will come to light during

the intervening period of time[;] [t]he SSA's disability determination process would cease to

function if ALJs could not rely on a medical opinion simply because some new evidence entered

the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL

3723985 (E.D. Tenn. 2010).

The ALJ's RFC assessment that Whitehorne could perform simple, routine work

involving little variation, with only occasional interaction with coworkers and superficial

interaction with the public, and which did not require her to independently develop work

strategies, identify workplace needs, travel to unfamiliar places, or engage in teamwork,

generally accounts for the mild to moderate limitations assessed by Baskin, Ryan, Ippolito,

Tzetzo, and Butensky, but rejects the more marked limitations identified by Ippolito.  (Tr. 884).

Having reviewed the records and relevant opinions, I disagree with Whitehorne that the opinions

of Baskin, Ryan, Tzetzo and Butensky were stale at the time of the ALJ's decision.

The record evidence does not demonstrate a deterioration in Whitehorne's

functional ability as a result of her 2017 hospitalization that would render these assessments

unreliable.  Indeed, the records demonstrate that although Whitehorne's mental health

16

temporarily deteriorated during the fall and winter of 2016 after she stopped taking medication to address her mental health impairments, her condition stabilized to baseline after she resumed medication during her hospitalization in January 2017.  After discharge from the hospital, Whitehorne continued to address her mental impairments, primarily through medication management, without participating in any ongoing mental health counseling.  Moreover, in reaching his conclusions, the ALJ explicitly considered that Whitehorne had been hospitalized for a period of time in 2017, but noted that the hospitalization had occurred after Whitehorne stopped taking her medication and that her condition had stabilized once she resumed taking the medication.  (Tr. 888-89).

In short, Whitehorne neither points to any medical evidence suggesting that after the opinions were rendered her condition deteriorated causing disabling functional limitations, nor identifies any relevant evidence post-dating the medical opinions that the ALJ failed to consider.  For these reasons, I find that substantial evidence supports the ALJ's RFC assessment. See, e.g., Ambrose-Lounsbury v. Saul, 2019 WL 3859011, *3-4 (W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history following [consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new ailment after [consultative examiner's] examination was the 'left ankle swelling'[;] . . . [b]ut the record does not evidence any limitation from that swelling that the ALJ did not account for in the RFC[;] [s]o the ankle swelling is hardly a 'significant development'"); Sexton v. Berryhill, 2018 WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was completed "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . . [h]ere, however, the opinions of the state agency physicians are relevant to the period to which they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in [p]laintiff's condition

17

that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly stated that additional evidence . . . was received and admitted into the record subsequent to the hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*, 2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of [consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

Similarly unavailing is Whitehorne's contention that the ALJ erred in discounting the marked limitations assessed by Ippolito.  (Docket # 12-1 at 19-20).  In his decision, the ALJ explained that he found those limitations were assessed largely upon Whitehorne's subjective complaints, which he determined were not fully credible and were inconsistent with the record evidence, including Whitehorne's daily activities and the other opinions of record.  (Tr. 895).  Contrary to Whitehorne's contention, the ALJ's findings are proper bases upon which to discount a medical opinion.  *See Scitney v. Colvin*, 41 F. Supp. 3d 289, 302-03 (W.D.N.Y. 2014) (ALJ properly discounted opinion of treating physician where the opinion was inconsistent with the record as a whole, including the opinions of state consultative physicians and claimant's testimony of daily activities); *Molina v. Colvin*, 2014 WL 3925303, *2 (S.D.N.Y. 2014) (ALJ did not err in declining to credit opinion of treating physician where the "opinion was

contradicted by 'other substantial evidence in the record,' including two other doctors' opinions"); *Atwater v. Astrue*, 2012 WL 28265, *4-5 (W.D.N.Y. 2012) (ALJ properly found treating physician's opinion inconsistent with record as a whole where opinion conflicted with opinions of state agency medical consultants and was inconsistent with claimant's reported activities), *aff'd*, 512 F. App'x 67 (2d Cir. 2013).

    In sum, Whitehorne's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence.  "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position."  *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016).  Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."  *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)).  The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it.  *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the

totality of the record evidence, and concluded that the evidence quoted above outweighed

[plaintiff's] evidence to the contrary") (internal quotation omitted).


## **CONCLUSION**

This Court finds that the Commissioner's denial of SSI was based on substantial

evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket**

**# 15)** is **GRANTED**.  Whitehorne's motion for judgment on the pleadings **(Docket # 12)** is

**DENIED**, and Whitehorne's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August 27, 2020